In the Matter of the Transfer Tax upon Certain Trusts Created by JABEZ A. BOSTWICK, now Deceased.

FANNY E. CARSTAIRS and Others, Appellants; BIRD S. COLER, as Comptroller of the City of New York, Respondent.

*Transfer tax on property transferred in contemplation of death — what transfer is subject to such tax.*

Property conveyed by certain instruments, executed and delivered to a trust company at different times between August 19, 1889, and February 3, 1892, providing that the party making such transfer could, at any time prior to his death, withdraw from the possession of the trust company any or all of the property transferred, and substitute other property in its place, and that he could alter, amend or terminate the trust in whole or in part, and that, in case of a termination, all the property should be returned to him, a further provision being inserted in some of the instruments to the effect that the income from the property, or the greater portion of it, should, during the life of the party making the transfer, if he so desired, be paid by the trust company to him, or to such other persons as he might direct, is subject to the transfer tax authorized by chapter 399 of the Laws of 1892, imposing a tax upon the transfer of any property, real or personal, of the value of $500 or over, or of any interest therein or income therefrom, in trust or otherwise, when the transfer is effected by "deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

APPEAL by Fanny E. Carstairs and others, from an order of the Surrogate's Court of New York county, entered in said Surrogate's Court on the 12th day of January, 1898, affirming an order of said Surrogate's Court which confirmed the report of an appraiser, imposing a transfer tax, and also from said last-mentioned order.

*R. E. Robinson,* for the appellants, Carstairs, Morrell and New York Life Insurance and Trust Company.

*James E. Kelly,* for the appellant Wyatt.

*Jabish Holmes, Jr.,* for the respondent, the comptroller of the city of New York.

McLAUGHLIN, J.:

This is an appeal from an order of the surrogate of the county of New York, confirming the report of an appraiser, imposing a transfer tax upon property received under certain deeds executed and delivered to the New York Life Insurance and Trust Company by Jabez A. Bostwick, deceased. Bostwick died in August, 1892, and at the time of his death was a resident of the city of New York. The statute imposing a tax, in force at the time of his death (Chap. 399, Laws of 1892, § 1, the Transfer Tax Act), provided, among other things, that a tax should be imposed upon the transfer of any property, real or personal, of the value of $500 or over, or of any interest therein or income therefrom, in trust or otherwise, when the transfer was made by " deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." The question presented is whether, under the statute, the transfers in question were subject to a tax. A slight consideration of some of the provisions of the instruments will demonstrate that the question is one not difficult of solution. The instruments, six in number, were executed and delivered to the trust company at different times between August 19, 1889, and February 3, 1892, and provided that Bostwick could, at any time prior to his death, withdraw from the possession of the trustee any or all of the property transferred, and substitute other property in its place. They also provided that he could alter, amend or terminate the trust in whole or in part, and in case of a termination all the property should be returned to him. A further provision was inserted in some of them to the effect that the income from the property, or the greater portion of it, should, during Bostwick's life, if he so desired, be paid by the trustee to him, or to such other persons as he might direct.

It requires neither argument nor authority to demonstrate that, under the statute referred to, a tax was properly imposed upon the property transferred. By these instruments Bostwick did not, in

fact, during his life, dispose of the property at all. After the delivery of the instruments to the trustee he could again not only acquire the possession of the property, but he could dispose of it just as effectually as he could before. The trustee was little more than bailee or attorney to hold and manage the property for him. No one except himself had any fixed or indefeasible interest in it until his death. In every legal sense, therefore, until then the property was his to enjoy and dispose of in any way he pleased. In reaching this conclusion *Matter of Masury* (28 App. Div. 580) has not escaped our attention. The principle there announced is not in conflict with this view. There the donor had no control over the income, but the same was directed to be paid by the trustee to a person named until he should arrive at the age of twenty-one years, when the property itself was to be delivered to him. Here the persons named in the different instruments had no absolute, unqualified or enforcible interest in either the property itself or the income therefrom until Bostwick's death. Until that time he reserved to himself the power to withdraw the same from the possession of the trustee, and he also reserved the right to alter, amend or terminate the trust if he so desired. Having reserved to himself this power, it must be held, under every well-recognized rule relating to the transfer of property, that the interest which the persons named in the different instruments had was one which was intended to take effect in possession or enjoyment only at or after Bostwick's death. The transfers were thus brought both within the letter and spirit of the statute. In *Matter of Green* (153 N. Y. 223, 227) by a trust deed a trustee was directed to pay the income upon the property transferred to the donor during her life, and upon her death to divide the property itself among three nieces, their issue or survivors, but no power of revocation whatever was reserved to the donor. The court there held that the transfer was intended to take effect in possession or enjoyment at or after the death of the grantor within the meaning of the statute, and that a tax was properly imposed. In disposing of that case the court said: "It is not important to determine whether the trust instrument was made in contemplation of death, or whether, upon the delivery thereof, the remainders vested in the nieces in such a sense as to constitute a gift *inter vivos* within the meaning of the cases cited by the learned counsel for the respondent.

First Department, March Term, 1899.            [Vol. 38.

It may be conceded that upon the delivery of the trust deed, an interest in remainder vested in the nieces subject to open and let in the children of one who had died during the lifetime of the donor, according to the terms of the instrument. The real question is whether the remainders which the nieces took under the deed were intended to '*take effect in possession or enjoyment*' at or after the death of the donor. Until her death, they had no actual possession, or right to the possession, of the property. Since they could not receive any part of the principal or the income till after her death, their right of enjoyment was postponed till the happening of that event. Whatever interest they may have had before, the right to the possession and enjoyment depended upon the death of the donor. We think it quite clear that the remainders were transferred to the nieces in possession or enjoyment, by an instrument intended to take effect for that purpose, at or after the death of the donor, and so the case is brought within the terms of the statute. It matters not whether the transfer is by grant or by gift so long as it was intended to take effect, in possession or enjoyment, at or after the death of the grantor or donor, the devolution of title is subject to the tax. The death of the donor was the event which made the transfer complete and effective and secured to the nieces the possession and enjoyment of the property." The language just quoted and the principle announced are quite applicable to the transfers under consideration. Here the death of the donor was one event which made the transfers of the property complete and effective. Until that time the persons mentioned in the different instruments had no right to the possession and no legal interest in the property. Until then Bostwick had the right to withdraw the property from the possession of the trustee, and to alter, amend or terminate the trust itself if he so desired. The reservation of this power clearly and unmistakably indicated an intention on the part of Bostwick that the transfers were not to take effect in possession or enjoyment until he died.

It follows that a tax was properly imposed, and that the order of the surrogate was right and should be affirmed, with costs to the respondent.

Van Brunt, P. J., Patterson, O'Brien and Ingraham, JJ., concurred.

Order affirmed, with costs.